IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JEWELERS MUTUAL INSURANCE COMPANY,

Plaintiff,

v.

MANGALAM, LLC,

Defendant.

CIVIL ACTION FILE
NO. 1:14-CV-2493-TWT

**OPINION AND ORDER**

This is a declaratory judgment action. It is before the Court on the Plaintiff Jewelers Mutual Insurance Company's Motion for Summary Judgment [Doc. 16]. For the reasons set forth below, the Plaintiff Jewelers Mutual Insurance Company's Motion for Summary Judgment [Doc. 16] is GRANTED in part and DENIED in part.

**I. Background**

The Defendant Mangalam, LLC is in the business of, *inter alia*, selling jewelry on exhibition trips throughout the United States.[1] The Defendant is operated primarily by its Principal Vinod Desai, as well as one or two employees.[2] The Plaintiff Jewelers

1 Pl.'s Statement of Facts ¶ 4.

2 Id.

Mutual Insurance Company issued an insurance policy (the "Policy") to the Defendant[3] which provided coverage for losses that occurred on the Defendant's premises and, subject to limitations, losses that occurred outside of the Defendant's premises.[4]

This case arises out of an incident in which the Defendant lost a portion of its inventory. On October 24, 2013, Vinod Desai, Tarlika Desai (Vinod's wife and an employee of the Defendant), and Sunit Patel (an employee of the Defendant) traveled to Ohio for business.[5] On October 27, 2013, during their return trip, they were robbed at gunpoint in Lexington, Kentucky.[6] Afterwards, the Defendant gave the Plaintiff notice of the incident.[7] The Plaintiff then investigated the incident and began processing the Defendant's claim.[8]

On March 3, 2014, the Defendant submitted a sworn statement setting forth the damages it was claiming as a result of the theft.[9] In particular, the Defendant claimed

---

[3] Id. ¶ 1.

[4] Id. ¶ 2.

[5] Id. ¶ 6.

[6] Id. ¶ 7.

[7] Id. ¶ 10.

[8] Id. ¶ 11.

[9] Id. ¶ 12.

that the lost property was worth roughly $790,000.[10] The Plaintiff, however, informed the Defendant that, under the Policy, the Defendant was entitled to only $200,000.[11] Consequently, the Plaintiff issued payment to the Defendant for that amount.[12] On July 17, 2014, the Defendant's attorney sent a letter to the Plaintiff disputing the Defendant's assessment of the Policy terms and demanding an additional $300,000 – for a total of $500,000. The Plaintiff brought suit against the Defendant, seeking "a judicial declaration that coverage for the October 27, 2013 loss is limited to the $200,000 already paid."[13] In response, the Defendant asserted counterclaims for (1) breach of contract and (2) bad faith refusal to tender payment (O.C.G.A. § 33-4-6). The Plaintiff now moves for summary judgment.

---

10 Pl.'s Mot. for Summ. J., Ex. 6.

11 Pl.'s Statement of Facts ¶ 14.

12 Id.

13 Compl. ¶ 29.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[14] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[15] The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact.[16] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[17] A "mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[18]

---

14 FED. R. CIV. P. 56(c).

15 Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

16 Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

17 Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

18 Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir.1990).

## III. Discussion

### A. Declaratory Judgment

If "there is an underlying ground for federal court jurisdiction, the Declaratory Judgment Act allow[s] parties to precipitate suits that otherwise might need to wait for the declaratory relief defendant to bring a coercive action."[19] The Plaintiff is seeking a declaration concerning the Defendant's rights under the Policy. The declaration is intended to resolve a dispute between the parties arising out of the losses suffered by the Defendant during the October 27, 2013 robbery. To be precise, the parties disagree on the interpretation of the Policy provision concerning losses that occur outside of the Defendant's premises. This provision states, in relevant part:

> d. Property in the custody of you, your employee, a commissioned salesperson, or a person you hire for a short time when traveling off the described premises:

---

[19] Household Bank v. JFS Grp., 320 F.3d 1249, 1253 (11th Cir. 2003) (internal quotation marks omitted).

| | |
|---|---|
| [**Subsection 1**] The most we will pay for any one loss involving an individual is . . .<br>a) You, your employees, or a person you hire for a short time who carry property valued at more than $25,000:<br><br>**Name, City, State, ZIP**<br><br>Mitesh Thakkar<br>Duluth, GA 30096<br>**And/Or**<br>Narendrabhai R. Patel<br>Lilburn, GA 30047<br>**And/Or**<br>Vinod Desai | $200,000 |
| . . . [**Subsection 2**] The most we will pay for any one loss involving two or more individuals traveling together is the lesser of the sum of their limits or | $500,000 |

The Plaintiff believes that under subsection 1(a), coverage does not extend to *all* "employees" or "person[s] . . . hire[d] for a short time" who carry "property valued at more than "$25,000," but only to the three individuals specifically listed: Thakkar, Patel, and Desai. Thus, according to the Defendant, since Desai was the only listed individual who was on the business trip when the robbery occurred, the Defendant's recovery is capped at $200,000. Conversely, the Defendant argues that subsection 1(a) broadly provides coverage – up to $200,000 per person – for "[the Defendant's]

employees, or a person [the Defendant] hire[s] for a short time who carry property valued at more than $25,000." According to the Defendant, certain names were listed under the broad language of subsection 1(a) merely to provide examples of who would be covered. The list was not meant to be exhaustive. Thus, the Defendant claims that Desai, Tarlika (an employee of the Defendant), and Sunit (also an employee of the Defendant) are *all* covered under subsection 1(a). Although this would amount to $600,000 of total coverage, subsection 2 limits the Plaintiff's liability to $500,000 for losses "involving two or more individuals traveling together." Consequently, the Defendant claims that it is entitled to $500,000 under the Policy.

Under Georgia law, courts interpreting an insurance contract "must first consider the ordinary and legal meaning of the words employed."[20] If "the terms of the contract are plain and unambiguous, the contract must be enforced as written."[21] If "a term in a contract is ambiguous, Georgia courts apply the rules of contract construction to resolve the ambiguity."[22] If "the ambiguity remains after the court applies the rules of construction, the issue of what the ambiguous language means and

---

[20] St. Paul Mercury Ins. Co. v. F.D.I.C., 774 F.3d 702, 708 (11th Cir. 2014).

[21] Id.

[22] Id.

what the parties intended must be resolved by the finder of fact."[23] And generally, "if an insurance contract is capable of being construed two ways, it will be construed against the insurance company and in favor of the insured."[24]

Here, the terms of subsection 1(a) are not plain and unambiguous. Subsection 1(a) opens with a general clause concerning who is covered – "your employees, or a person you hire for a short time who carry property valued at more than $25,000" – and then ends with a list of three specific names. There is no express language explaining whether the list is meant to qualify the general clause, or simply to provide examples of who would be covered. Consequently, the Court must turn to rules of construction.[25] In moving for summary judgment, the Plaintiff invokes two.

---

[23] Id.

[24] Id. at 709 (internal quotation marks omitted).

[25] In its Reply Brief, the Plaintiff makes a number of arguments to show that the Policy terms are unambiguous. These arguments are without merit. For example, the Plaintiff argues that the terms and phrases "employees" and "a person you hire for a short time when traveling . . . applying their ordinary meaning, are not susceptible to more than one reasonable interpretation" because subsections 1 and 2 "limit[] the application of these terms and phrases by specifically listing by name the persons who fall within the . . . categories of individuals for which coverage is provided when an off-premises loss occurs." Reply Br., at 6-7. This is not an argument for why there is no ambiguity. The Plaintiff is simply asserting that its reading is clearly the correct one. The problem, of course, is that it is *not* clear that the broad terms of the general clause are defined by – or *limited* by – the list of names that follows it. There is no express indication in the Policy of whether the list is meant to limit the general clause or to provide examples of people that fall within it.

First, the Plaintiff argues that the Defendant's reading of subsection 1(a) would render the list of names irrelevant.[26] After all, if the general clause incorporates the names on the list, then there would be no reason for the list. Generally, "a contract must be interpreted to give the greatest effect possible to all provisions rather than to leave any part of the contract unreasonable or having no effect."[27] Thus "a court should, *if possible*, construe a contract so as not to render any of its provisions meaningless."[28] Here, the Plaintiff's argument cuts both ways. If the Plaintiff's reading were accepted, then part of the general clause would be rendered meaningless. Indeed, what would the point be of broadly stating "your employees, or a person you hire for a short time" if coverage *only* extended to the three people listed afterwards? Additionally, the Defendant's reading does not necessarily render the list meaningless. For example, the list forecloses any dispute regarding whether the named individuals fit into the broad category described by the general clause. If the list were absent, the Defendant would have to litigate the issue of whether the individuals were indeed "employees" or "person[s] . . . hire[d] for a short time who carry property valued at

---

26 Pl.'s Mot. for Summ. J., at 16.

27 Young v. Stump, 294 Ga. App. 351, 353 (2008).

28 Id. (emphasis added).

more than $25,000" in the event that the Defendant was seeking recovery for losses suffered by those individuals.

Second, the Plaintiff argues – invoking the maxim of *expressio unius est exclusio alterius* – that when a list is present, the Court must assume it is exclusive.[29] The interpretive canon "[e]xpressio unius est exclusio alterius" posits that "[t]he express mention of one thing implies the exclusion of another."[30] However, for "the [expressio unius] doctrine to apply, it must appear that a complete enumeration or list normally would have included that which was omitted, thus making omission from the [contract] significant."[31] Here, given the general clause, it is not clear that the list would have included additional people if coverage was meant to extend to them. To be sure, although its facts are dissimilar from those here, the case of City of Atlanta v. Southern States Police Benevolent Association of Georgia[32] is instructive. In that case, the court was interpreting statutory provisions "to determine whether [certain] pension boards [had] authority independent of the City to hire a third-party

---

29 Pl.'s Mot. for Summ. J., at 14-15.

30 Krogh v. Pargar, LLC, 277 Ga. App. 35, 39 (2005) (internal quotation marks omitted).

31 City of Atlanta v. Southern States Police Benev. Ass'n of Georgia, 276 Ga. App. 446, 455 (2005).

32 276 Ga. App. 446 (2005).

administrator and outside legal counsel."[33] The relevant statutory provisions broadly stated that the pension boards had the power to "manage [pension funds]" and "make all rules for the payment of [pension benefit] funds to those entitled to receive the same."[34] Despite this broad mandate, the City nonetheless argued that the pension boards lacked the power to independently hire third-party administrators or outside legal counsel. It "emphasize[d] that the . . . pension boards [had] been given *specific* statutory authority to contract for [1] an independent actuary and [2] an independent investment counselor."[35] Thus, the City "argue[d] that the express mention of independent actuarial and investment services in the pension statutes implies the exclusion of the authority in the boards of contract for a third-party administrator."[36] In rejecting this argument, the court noted:

> Given the expansive language found in the pension statutes regarding broad authority . . . we do not believe that the omission of a specific reference to board authority to contract for a third-party administrator is significant since there would be no reason for the [legislature] to believe that such a reference was even necessary. The [legislature] could assume that the more narrow power was implicitly included in the award of the

---

33 Id. at 453.

34 Id. at 454 (internal quotation marks omitted).

35 Id. at 455 (emphasis added).

36 Id.

> broader power. Thus, we reject the City's contention that the doctrine of expressio unius applies in this context.[37]

Here, similarly, the list of names must be read in light of the broad, general clause preceding it. Due to the general clause, it is possible that the parties failed to refer to Tarlika and Sunit in the list because they did not "believe that such a reference was even necessary."[38] And although Southern States Police dealt with statutory interpretation, the expressio unius "principle of construction . . . appli[es] to statutes and contracts alike."[39] Accordingly, the Plaintiff has failed to establish that it is entitled to judgment as a matter of law in favor of its declaratory judgment claim.

**B. Bad Faith**

The Defendant asserts a counterclaim, under O.C.G.A. § 33-4-6, based upon the Plaintiff's alleged failure to tender sufficient payment within sixty days of receiving the Defendant's demand letter.[40] The Defendant claims that the Plaintiff's failure to pay was motivated by bad faith.[41] To "prevail on a claim for an insurer's bad faith under OCGA § 33-4-6, the insured must prove: (1) that the claim is covered under the

---

[37] Id. at 455-56.

[38] Id.

[39] Miller Cnty. Bd. of Educ. v. McIntosh, 326 Ga. App. 408, 413 (2014).

[40] Am. Countercl. ¶ 27.

[41] Am. Countercl. ¶ 28.

policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the insurer's failure to pay was motivated by bad faith."[42] The "the insured bears the burden of proving that the refusal to pay the claim was made in bad faith."[43] Bad faith "is shown by evidence that under the terms of the policy upon which the demand is made and under the facts surrounding the response to that demand, the insurer had no good cause for resisting and delaying payment."[44] Section 33-4-6 must be "strictly construed."[45] Thus, an "insurer is entitled to judgment as a matter of law if it has reasonable grounds to contest the claim or the question of liability is close."[46]

Here, there is no genuine issue of material fact concerning whether the Plaintiff acted in bad faith when it failed to tender payment in the amount demanded by the Defendant. On July 17, 2014, the Defendant made an official demand for payment of

---

[42] BayRock Mortgage Corp. v. Chicago Title Ins. Co., 286 Ga. App. 18, 19 (2007).

[43] Atlantic Title Ins. Co. v. Aegis Funding Corp., 287 Ga. App. 392, 393 (2007) (internal quotation marks omitted).

[44] Id. (internal quotation marks omitted).

[45] Howell v. Southern Heritage Ins. Co., 214 Ga. App. 536 (1994).

[46] Atlantic Title Ins. Co., 287 Ga. App. at 393.

$500,000 under the Policy.[47] On July 18, 2014, the Plaintiff tendered payment in the amount of $200,000, but refused to pay the full $500,000.[48] The Plaintiff based its refusal on its interpretation of the Policy. As explained above, the Policy terms are ambiguous on this issue. Consequently, the Plaintiff had reasonable grounds for contesting the Defendant's demand. Because the Defendant has failed to meet its burden in establishing that the Plaintiff acted in bad faith, the latter is entitled to judgment as a matter of law on the bad faith counterclaim.

## IV. Conclusion

For these reasons, the Court GRANTS in part and DENIES in part the Plaintiff Jewelers Mutual Insurance Company's Motion for Summary Judgment [Doc. 16].

SO ORDERED, this 30 day of June, 2015.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

47 "A demand made under OCGA § 33-4-6 must give the insurer notice that it is facing a bad faith claim." BayRock Mortgage Corp., 286 Ga. App. at 20. The "the language must be sufficient to alert the insurer that bad faith is being asserted." Primerica Life Ins. Co. v. Humfleet, 217 Ga. App. 770, 772 (1995). Here, the *only* "demand" that satisfies this requirement was the letter sent by the Defendant's attorney on July 17, 2014. Pl.'s Mot. for Summ. J., Ex. 8.

48 Pl.'s Statement of Facts ¶ 14.